# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5566-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JESUS AGUILAR,

     Defendant-Appellant.

_____

Submitted November 12, 2019 – Decided February 24, 2020

Before Judges Rothstadt and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 12-09-0931.

Joseph E. Krakora, Public Defender, attorney for appellant (Adam W. Toraya, Designated Counsel, on the brief).

Angelo J. Onofri, Mercer County Prosecutor, attorney for respondent (Laura C. Sunyak, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Jesus Aguilar appeals from the denial of his post-conviction relief (PCR) petition without an evidentiary hearing. He argues:

POINT I

THE POST-CONVICTION RELIEF COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO FULLY ADDRESS HIS CONTENTION THAT HIS ATTORNEY WAS INEFFECTIVE IN FAILING TO ADVANCE HIS MOTION TO WITHDRAW HIS GUILTY PLEA.

A. THE PREVAILING LEGAL PRINCIPLES REGARDING CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL, EVIDENTIARY HEARINGS, AND PETITIONS FOR POST-CONVICTION RELIEF.

B. DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO ADVANCE HIS MOTION TO WITHDRAW HIS GUILTY PLEA.

Unpersuaded, we affirm.

Absent an evidentiary hearing, our review of the factual inferences drawn from the record by the PCR court is de novo. State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016). Likewise, we review de novo the PCR court's legal conclusions. Ibid.

A-5566-17T1

Originally indicted for five counts of fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b) (counts one, two, four, five, and six); seven counts of second-degree sexual assault, N.J.S.A. 2C:14-2(c)(4) (counts three, seven, eight, ten, twelve, fourteen, and sixteen); four counts of second-degree sexual assault by physical force or coercion, N.J.S.A. 2C:14-2(c)(1) (counts nine, eleven, thirteen, and fifteen); and two counts of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (counts seventeen and eighteen), defendant pleaded guilty to second-degree sexual assault of a fifteen-year-old girl by physical force or coercion, N.J.S.A. 2C:14-2(c)(1) (count nine). The plea, entered on the day trial was to begin, was open; that is the State did not make a sentencing recommendation but reserved the right to argue for a sentence in the second-degree range.

When given the opportunity to allocute at sentencing, defendant told the judge: "I have many things that aren't clear and I'd like a motion to vacate [the] guilty plea." He claimed he "never used force against the victim." Defendant's counsel informed the judge that she was not aware of defendant's desire to withdraw his plea. The judge granted a recess for defendant to consult with counsel. Thereafter, counsel advised the judge defendant did not agree with her assessment that defendant's basis for withdrawing his plea would not satisfy the

test under <u>State v. Slater</u>, 198 N.J. 145, 150 (2009).[1]  Although defendant admitted he "made a mistake," he reiterated his claim that he "never used force against the victim" and averred he could prove that.  When asked by the sentencing judge what proof he had to support his proposed motion, defendant replied:

> In the discovery that [the victim] has and the statements that she has, she explains that we had a consensual relationship.  And there are things that aren't clear and, as far as us having relations . . . how can I force somebody and then nevertheless afterward that person is a virgin[?]  So the only thing that I would like to clarify is that I never used force against her in any way.

The judge, recounting the plea proceedings, found no basis for defendant's proposed plea withdrawal and sentenced defendant to a five-year prison term, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, and other applicable statutory requirements.

---

[1]  In <u>Slater</u>, the New Jersey Supreme Court created a four-factor test for determining whether a defendant should be allowed to withdraw his or her guilty plea, which requires the court to consider:  "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused."  198 N.J. at 150.

Defendant argues his trial counsel was ineffective for failing to advance a motion to withdraw his plea, contending he told counsel, in a letter he sent prior to sentencing and on other occasions, he was not guilty and the allegations of sexual relations with the victim were false.

Although the PCR judge addressed the merits of defendant's PCR petition, declining to address any procedural bars, we note defendant's appellate counsel argued before our excessive sentencing panel:

> [T]his is a situation where the defendant appeared for sentencing and . . . [asked] to have his plea back. The problem that I have with it is that [trial] counsel's response was, ["]my client has no basis for such a motion["] and as far as I'm concerned . . . he's entitled to something more than my client hasn't got a leg to stand on . . . please deny his motion.
>
> So I think that a remand is in order for a proper Slater hearing.

In addition to affirming defendant's sentence, we determined, "[d]efendant's arguments pursuant to [Slater] . . . are without sufficient merit to warrant discussion." State v. Aguilar, No. A-0612-14 (App. Div. July 29, 2015).

Rule 3:22-5 bars a defendant from raising an issue in a PCR petition that is identical or substantially similar to an issue that was already raised and adjudicated in the defendant's direct appeal. State v. Marshall, 173 N.J. 343, 351 (2002). Inasmuch as the argument that trial counsel failed to advance a

motion to withdraw defendant's plea was already made on appeal and rejected, defendant is procedurally barred from presenting the same argument in this PCR matter.

Moreover, we note defendant does not argue in his merits brief how he would overcome the "formidable barrier" created by his own admissions during the plea hearing in order to prevail at a Slater hearing.  Slater, 198 N.J. at 156. We agree with the State's argument before the excessive sentencing panel that defendant would not be able to prevail on a motion to withdraw his plea because, in claiming he never used force against the victim, he misapprehended that term as it applies to sexual assaults under N.J.S.A. 2C:14-2(c)(1).

In construing that statute, our Supreme Court held, "[t]he definition of 'physical force' is satisfied under N.J.S.A. 2C:14-2[(c)](1) if the defendant applies any amount of force against another person in the absence of what a reasonable person would believe to be affirmative and freely-given permission to the act of sexual penetration."  In re M.T.S., 129 N.J. 422, 444 (1992). Finding that the Legislature eliminated "nonconsent and resistance from the substantive definition" of sexual assault when it reformed the sexual assault statute in 1978, id. at 440-41, 443, the Court was "satisfied that an interpretation of the statutory crime of sexual assault to require physical force in addition to

that entailed in an act of involuntary or unwanted sexual penetration would be fundamentally inconsistent with the legislative purpose to eliminate any consideration of whether the victim resisted or expressed non[]consent," id. at 443.

When admitting to the crime during the plea colloquy, defendant agreed that he anally penetrated the victim and continued to do so after she indicated she was in pain and said, "no." He understood that the anal penetration was against the victim's will. Defendant's admissions proved the State's burden "that there was sexual penetration and that it was accomplished without the affirmative and freely-given permission of the . . . victim." Id. at 448. "Because 'physical force' as an element of sexual assault in this context requires the absence of affirmative and freely-given permission, the 'consent' necessary to negate such 'physical force' under a defense based on consent would require the presence of such affirmative and freely-given permission." Id. at 449. Defendant, therefore, would not have been able to demonstrate that he did not provide a factual basis for the plea based on his claim that he did not use force.

Nor did defendant assert a colorable claim of innocence. Contrary to defendant's claim that the allegations of sexual relations were false, DNA analysis of sperm found in the victim's underwear confirmed defendant as the

source, and numerous messages between defendant and the victim confirmed sexual relations. Although there were no allegations of vaginal penetration— perhaps explaining defendant's claim that the victim was still a virgin—the State alleged acts of fellatio and cunnilingus in addition to defendant's admitted act of anal penetration. As such, defendant would not be able to satisfy his burden to show that his proposed motion would have been successful if filed. See State v. Fisher, 156 N.J. 494, 501 (1998). Counsel's decision not to file the motion did not constitute ineffective assistance under the familiar Strickland-Fritz standard.[2]

Defendant also claims in his merits brief that his "trial counsel 'lied and misinformed' him"; "constantly barraged [him] to plead guilty"; and "coerced and cajoled him into accepting the [S]tate's plea offer." He argues the PCR judge erred by failing to hold an evidentiary hearing at which "he could have explained how he had been misled and coerced by his attorney to enter the plea,

---

[2] The test announced by the United States Supreme Court for determining if counsel was ineffective, adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), requires a defendant to first show that counsel was deficient or made errors so egregious that counsel was not functioning effectively as guaranteed by the Sixth Amendment of the Unites States Constitution. Strickland v. Washington, 466 U.S. 668, 687 (1984). To meet the second prong, a defendant must also demonstrate that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

8

how he was not guilty of the crime to which he had previously entered a guilty plea, and how his attorney refused to file a motion to withdraw the plea." He asserts his counsel told him he would likely get a three-year sentence and would face little more prison time because he already amassed two years of jail credit.

Like the PCR judge, we engaged in a careful review of the plea transcript that shows the judge engaged in a patient and thorough colloquy with defendant that belies defendant's claims. That colloquy revealed trial counsel assumed defendant's representation about one month after the case had been placed on the trial list on May 6, 2013. In preparing the case for trial, she claimed the State had not timely provided discovery. The State admitted sending her DNA packets containing New Jersey State Police Lab worksheets which were the basis for a previously provided report; Facebook messages between defendant and the victim, translated from Spanish to English; and the victim's birth certificate. Counsel also learned from her review of discovery that defendant faced federal charges because he had previously been deported and reentered the United States prior to the alleged crimes, a fact of which defendant had not been made aware prior to trial counsel's consultation with him.

The ensuing colloquy with defendant makes abundantly clear that defendant had full opportunity to proclaim his innocence and tell of trial

counsel's coercion and deceit. The judge's initial questioning informed defendant he had an open line of communication with the judge throughout the plea hearing:

> [THE COURT]: Now, I'm going to ask you questions this morning that sometimes call for a yes or no answer. I do this so that I can focus in on determining whether to accept your guilty plea. Do you understand?
>
> [DEFENDANT]: Yes, sir.
>
> [THE COURT]: By asking you these questions, I'm not trying to lead you into saying something that is not true. I'm not trying to trick you or I'm not trying to get you to say what anyone else wants you to say. Do you understand?
>
> [DEFENDANT]: Yes, sir.
>
> [THE COURT]: If you feel that you're being forced into giving an answer by the way that I'm asking you a question, or saying something that is not true, please let me know before you answer. Do you understand?
>
> [DEFENDANT]: Yes, sir.
>
> [THE COURT]: If you don't understand my question, or you don't understand something we are talking about, please let me know. Do you understand?
>
> [DEFENDANT]: Yes, sir.
>
> [THE COURT]: If I say something different than what you believe, or what you were told by someone else, what will control is our conversation and not what anyone else has told you. Do you understand?

10

[DEFENDANT]:  Yes, sir.

[THE COURT]:  If something does not sound right to you, tell me as we go through this.  Do you understand?

[DEFENDANT]:  Yes, sir.

[THE COURT]:  What we say here today on the record will control whether or not your guilty plea today will be accepted or rescinded either now or at some future date . . . and not what anyone else has told you.  Do you understand?

[DEFENDANT]:  Yes, sir.

[THE COURT]:  If you need to speak to your attorney . . . at any point during this proceeding, let me know and I will give you all the time that you need.  Do you understand?

[DEFENDANT]:  Yes, sir.

Defendant's admissions to the judge stand in stark contrast to his present allegations against his trial counsel:

[THE COURT]:  Has anyone forced you or threatened you to give up these rights?

[DEFENDANT]:  No, sir.

    . . . .

[THE COURT]:  Are you satisfied with [trial counsel's] advice?

[DEFENDANT]:  Yes, sir.

11

[THE COURT]:  Has she answered all of your questions to your satisfaction?

[DEFENDANT]:  Yes, sir.

[THE COURT]:  Do you need any additional time to speak to [trial counsel] or anybody else such as a family member or friend regarding your guilty plea or anything in connection with the charges against you?

[DEFENDANT]:  No, sir.

[THE COURT]:  Is anyone forcing or threatening you to plead guilty?

[DEFENDANT]:  No, sir.

[THE COURT]:  Knowing everything that I've said, do you want me to allow you to plead guilty?

[DEFENDANT]:  Yes, sir.

[THE COURT]:  Are you pleading guilty because you are guilty and for no other reason?

[DEFENDANT]:  Yes, sir.

. . . .

[THE COURT]:  Are you giving this plea knowingly, intelligently, and voluntarily?

[DEFENDANT]:  Yes, sir.

[THE COURT]:  And do you understand everything that we've done and spoken about so far?

[DEFENDANT]:  Yes, sir.

A-5566-17T1

[THE COURT]: Is there anything you wish to ask me before we go further?

[DEFENDANT]: No, sir.

[THE COURT]: Is there anything you wish to ask [trial counsel] before we go further?

[DEFENDANT]: No, sir.

. . . .

[THE COURT]: Now, I've asked you questions this morning in a yes or no format. Do you feel that I forced you to give the answers that you've given today?

[DEFENDANT]: No, sir.

[THE COURT]: Has anyone told you to give me the answers that you've given?

[DEFENDANT]: No, sir.

[THE COURT]: And have you entered into this plea agreement knowingly, intelligently, and voluntarily?

[DEFENDANT]: Yes, sir.

[THE COURT]: And do you want me to accept your plea of guilty?

[DEFENDANT]: Yes, sir.

Defendant's contention that trial counsel told him his exposure would likely be three years is also belied by the record. During the preliminary stages of the plea hearing—in defendant's presence—the assistant prosecutor advised:

"This is an open plea.  The State is not making a recommendation.  The State is going to argue that the defendant be sentenced within that second[-]degree range."  Later, after the judge told defendant, "please pay close attention while the [assistant] prosecutor . . . places the plea agreement on the record," the assistant prosecutor stated the plea agreement exposed defendant

> to a sentence within the five[-] to ten[-]year range, of which [eighty-five] percent he'll have to serve.  The State [in]tends to make an argument that he serve a sentence within that second[-]degree range.  Ultimately, that sentence is going to be with the [c]ourt's discretion and that's because this is an open plea offer.  The State is not making any recommendation.

Defendant responded affirmatively when the judge asked him if that was his understanding of the plea agreement.

He reiterated his understanding when the judge reviewed that he faced "a maximum of ten years" and "would have to serve [eighty-five] percent of that time"; and that "the State will make no recommendation to [the judge] other than stating that [the judge] should sentence [defendant] anywhere between five to ten years" subject to the NERA parole ineligibility.  The colloquy continued:

> [THE COURT]:  Do you also understand that your attorney . . . will try to present facts to me that would cause me to give you less time than five years NERA?
>
> [DEFENDANT]:  Yes, sir.

A-5566-17T1

[THE COURT]: But I will not make that decision nor can I make that decision until we appear at your sentencing. Do you understand that?

[DEFENDANT]: Yes, sir.

[THE COURT]: So to make it – try to make it even simpler, [defendant], do you understand that at this point in time I can sentence you from anywhere between five to ten years NERA, you will serve [eighty-five] percent of that time unless [trial counsel] convinces me that it would be in the interest of justice to allow you to do less than five years? Do you understand that?

[DEFENDANT]: Yes, sir.

[THE COURT]: And whatever amount of time I give you, whether it's been five and ten years or less than five years, you must serve [eighty-five] percent of that time. Do you understand that?

[DEFENDANT]: Yes, sir.

[THE COURT]: And do you understand that I'm not making any guarantees to you at this point in time how much time I will give you? Do you understand that?

[DEFENDANT]: Yes, sir.

The colloquy also established that defendant: reviewed all of the discovery provided by the State with trial counsel; reviewed the plea forms utilizing an interpreter, and understood them; understood trial counsel's explanation of "everything on the plea papers"; was satisfied with trial counsel's

advice; had all his questions answered by counsel; and did not need any additional time to speak with counsel.

"[I]n order to establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Defendant's bald assertions about counsel's ineffectiveness, belied by the record, do not establish a prima facie claim. "Defendant may not create a genuine issue of fact, warranting an evidentiary hearing, by contradicting his prior statements without explanation." Blake, 444 N.J. Super. at 299. And, an evidentiary hearing is not to be used to explore PCR claims. See State v. Marshall, 148 N.J. 89, 157-58 (1997). Thus, the PCR court correctly denied defendant's request for an evidentiary hearing. R. 3:22-10(b); State v. Preciose, 129 N.J. 451, 462-63 (1992). As we have determined, defendant failed to establish a "reasonable likelihood of succeeding" under the familiar Strickland-Fritz test. Preciose, 129 N.J. at 463.

To the extent not addressed, we determine the balance of defendant's arguments, including that his appellate counsel was ineffective, are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). Defendant did not advance in his merits brief any of the other arguments

presented to the PCR judge; we will not address them.  See <u>Sklodowsky v. Lushis</u>, 417 N.J. Super. 648, 657 (App. Div. 2011) (holding that "[a]n issue not briefed on appeal is deemed waived").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION